IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAVERICK TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW ROBERT SHELTON,<br><br>Defendant. | CIVIL NO. 07-297-WDS |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's motion to dismiss (Doc. 14), to which plaintiff has filed a response (Doc. 16), and defendant a reply (Doc. 17).

### BACKGROUND

Plaintiff, Maverick Technologies, LLC ("Maverick"), is an engineering, programming, and systems integration firm. In June of 2000,[1] Maverick hired the defendant, Andrew Shelton ("Shelton"), as a Regional Director of the firm. Because Shelton's work required him to have access to confidential and proprietary information, such as customer lists, pricing information, and business processes, Maverick required Shelton to sign a Confidentiality and Non-Solicitation Agreement prior to his hiring, which he did. Eventually, Shelton was promoted to Vice President of Maverick, which gave him direct access to and responsibility over clients, including Honeywell International. In July of 2007, Shelton terminated his employment with

---

[1] Maverick's original complaint filed in Circuit Court states that Maverick hired Shelton "on or about June 26, 2006." Complaint at ¶ 3. This same date is reproduced throughout Maverick's memorandum in opposition to Defendant's motion to dismiss. However, in both the Defendant's memorandum in support of his motion to dismiss and declaration, Shelton asserts that "Maverick hired Shelton in June of 2000." The Employment Agreement entered into by both parties is dated June 29, 2000. The Confidentiality and Non-Solicitation Agreement is undated, but incorporates by reference the Employment Agreement.

Maverick. Soon thereafter, he entered into employment with Honeywell International, which Maverick considers to be a direct competitor.

In March of 2007, Maverick filed a four-count complaint in the Circuit Court of the Twentieth Judicial Circuit, Monroe County, Illinois, against Shelton, seeking: (1) injunctive relief against further breaches of the Confidentiality and Non-Solicitation Agreement; (2) damages for breach of the Confidentiality and Non-Solicitation Agreement; (3) enjoinment and damages for misappropriation of trade secrets; and (4) damages for breach of fiduciary duty. Shelton timely removed the action to this court, pursuant to 28 U.S.C. §§ 1332 and 1441.

The record reveals that Maverick is a Missouri Limited Liability Company duly authorized as a foreign corporation in Illinois, with its primary place of business in Illinois. Shelton is a full-time resident of the state of Texas and has lived there continuously throughout his employment with Maverick. Shelton was initially interviewed by Maverick's President and CEO, Paul Galeski, via telephone, Galeski calling from Maverick's Illinois office to Shelton in Texas. Both the Employment Agreement and the Confidentiality and Non-Solicitation Agreement entered into by the parties denote Missouri law as the choice of law to govern the agreements. The notice provisions of both agreements list Maverick's address as Fairview Heights, Illinois, and Shelton's address as El Lago, Texas.

Throughout his employment, Shelton regularly communicated and transacted business with Maverick's Illinois office and traveled there once or twice a year for business meetings. Shelton does not own real property, maintain any bank accounts, pay state taxes, or vote in the state of Illinois. Shelton's current employment is in Texas. Since leaving Maverick, Shelton has had no further contact with the state of Illinois.

**ANALYSIS**

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. Under Rule 12(b)(2), the plaintiff has the burden of alleging sufficient facts to support jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). A court may receive and consider affidavits from both parties in deciding the motion. *Id.* Any factual conflicts between the parties are to be resolved in favor of the plaintiff, however the Court takes as true facts contained in the defendant's affidavit that are not refuted by the plaintiff. *Id.* at 783; *RAR, Inc v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

In a case of diversity of citizenship, "a federal district court sitting in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction." *Glass v. Kemper Corp.*, 930 F. Supp. 332, 337 (N.D. Ill. 1996) (citing *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990)). A two-part inquiry is necessary to determine whether an Illinois court has jurisdiction: (1) whether Illinois' long-arm statute allows *in personam* jurisdiction, and (2) whether the assertion of jurisdiction under the long-arm statute complies with due process. *Id. See, Purdue Research*, 338 F.3d at 779; *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp.2d 902, 905 (N.D. Ill. 2006).

Under Illinois' long-arm statute, Illinois courts may exercise jurisdiction for any reason permitted by the Illinois Constitution and United States Constitution. 735 ILCS 5/2-209(c). "[T]here is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

Under the Due Process Clause of the Fourteenth Amendment, to exercise personal

jurisdiction over a nonresident defendant "certain minimum contacts" with the state are required so that "the suit does not offend 'traditional notions of fair play and substantial justice.'" *See RAR, Inc.*, 107 F.3d at 1277 (*quoting Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945)). The purpose of the minimum contacts requirement is to ensure that the defendant has purposefully availed himself of the privilege of conducting activity within the forum state and therefore can reasonably foresee being subject to a suit in the state. *Hartwig*, 913 F.2d at 1217-18. The minimum contacts requirement differs depending on whether the plaintiff asserts general or specific jurisdiction. *United Financial*, 245 F. Supp.2d at 891.

I. Specific Jurisdiction

Specific jurisdiction is appropriate where the particular suit at hand "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Specific jurisdiction is distinguishable from general jurisdiction in that it considers the subject matter of the present litigation. Thus, Shelton's contacts with the state of Illinois must relate to Maverick's claims in order for the Court to find specific jurisdiction.

In analyzing the minimum contacts requirement for specific jurisdiction, the Supreme Court in *Rudzewicz* held that "jurisdiction is proper [ ] where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." 417 U.S. at 475. "Thus, where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id.* at 476.

Once it has been determined that a defendant purposefully established minimum contacts within the forum state, the Court may consider other factors, such as: "the burden on the

defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 476-77.

The Seventh Circuit has held that foreseeability is a key factor in determining whether the defendant has deliberately engaged in significant activities within the forum state. *Purdue Research*, 338 F.3d at 780. "The foreseeability that is significant for this purpose is whether the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Id.* The existence of a contract between the parties, without more, is insufficient to establish specific jurisdiction. *Id.* at 781. However, applying *Rudzewicz*, the Seventh Circuit has emphasized taking a "'highly realistic' approach ... plac[ing] the contract in the context of the entire transaction of which it is a part. Thus, [the Court] must take into account prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." 338 F.3d at 781.

Applying these standards to the case before this Court, the record reveals that Shelton has sufficient minimum contacts with the state of Illinois to reasonably foresee that a potential lawsuit may be brought against him in an Illinois court. Although Shelton negotiated his employment from Texas, he did so with the understanding and purpose of being hired by Maverick's Illinois office. Moreover, under the explicit terms of his Employment Agreement, Shelton's employment did not actually *begin* until the contract was signed by Galeski, from the Illinois office. Once employed, Shelton regularly communicated with and reported to Maverick's Illinois office via telephone, email, and through access to the Illinois office's computer server. In fact, Shelton admits in his declaration that he reported to Galeski daily via

email.  Shelton also became a shareholder of Maverick and therefore had an interest in the firm's well-being as a whole.  In making this inquiry, it is of less importance that Shelton only traveled to Illinois a couple of times a year.  "Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business in conducted."  *Rudzewicz*, 471 U.S. at 476.

Shelton argues that specific jurisdiction is improper because the Employment and Confidentiality and Non-Solicitation Agreements entered into between the parties included Missouri choice of law provisions.  Choice of law provisions, however, are insufficient alone to confer jurisdiction, although they may reinforce affiliation with a particular forum.  *Id.* at 482. (*See, Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126, 132 (N.D. Ill. 1989) ("[T]he concept of choice-of-law is distinct from consent to personal jurisdiction, and is quite conceivable that a choice-of-law provision might be included in a contract for reasons wholly unrelated to jurisdiction concerns . . .").)

In this case, Shelton deliberately engaged in significant activities within the state of Illinois based on his employment relationship with Maverick.  This is not a situation where the quality and nature of Shelton's transactions with Maverick in the state of Illinois were too "random, fortuitous, or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction."  *Rudzewicz*, 471 U.S. at 486 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Shelton's regular communications with Maverick's Illinois office, the terms of his employment, plus the nature and quality of his employment relationship with Maverick all indicate that it was certainly

foreseeable that if sued for allegedly breaching the terms of his employment, Shelton could be haled into Illinois court to answer those claims. Therefore, the Court **FINDS** that specific jurisdiction over Shelton exists in this action, and that he is subject to suit in the state of Illinois.

> II. Fiduciary Shield Doctrine

The Illinois fiduciary shield doctrine provides a defense to personal jurisdiction based on Illinois due process. *See Glass*, 930 F. Supp. at 340. That doctrine precludes Illinois courts from exercising jurisdiction over a nonresident corporate official whose contacts within the state have no personal benefit, but rather are made solely in the official's corporate capacity. *United Fin.*, 245 F. Supp.2d at 894 (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994)). For example, the Illinois Supreme Court in *Ellwood v. City of Baltimore* held that the fiduciary shield doctrine precluded jurisdiction where a police officer's sole contact with the state was for the purpose of apprehending a supposed fugitive on behalf of his employer. *Ellwood v. City of Baltimore,* 565 N.E.2d 1302, 1317-19 (Ill. 1990).

"The cases that have addressed this issue generally conclude that the shield should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction." *Brujis v. Shaw*, 876 F. Supp. 975, 978 (N.D. Ill. 1995) (*citing Renner v. Grand Trunk W. R.R. Co.*, 641 N.E.2d 1, 3 (Ill. App. Ct. 1994); *People ex. rel. Morse v. E & B Coal Co.*, 634 N.E.2d 436, 441 (Ill.App.Ct. 1994)). Although no single factor is determinative, a defendant's personal gain, discretionary actions, and ownership of most of a corporation's stock are all to be considered. 876 F. Supp. at 980.

Significantly, the fiduciary shield doctrine is an equitable doctrine. *United Fin.*, 245 F. Supp.2d at 895. It is discretionary, and therefore not an absolute entitlement. *Id.* Its application depends on the particular facts of the case at hand and should be employed based on

considerations of fairness.  *Torco Oil Co.*, 730 F. Supp. at 135.

Applying these principles to this case, equity favors finding the fiduciary shield doctrine does not apply here.  Shelton maintained sufficient minimum contacts with the state of Illinois such that it was foreseeable that he might one day be haled into Illinois court based on the nature and quality of his employment relationship with Maverick.  Shelton sought employment with Maverick out of the firm's Illinois office, ultimately himself becoming a shareholder of the firm and enjoying the personal benefits of that relationship.  For these reasons, it seems inapposite to discretionarily negate those significant personal benefits, protected by Illinois law, by applying the fiduciary shield doctrine.

## CONCLUSION

Based on the foregoing, the Court **FINDS** that specific jurisdiction over defendant Shelton exists in this case, and accordingly, **DENIES** defendant's motion to dismiss for lack of personal jurisdiction on all grounds raised.

**IT IS SO ORDERED.**

**DATED:   March 5, 2008.**

                                              **s/ WILLIAM D. STIEHL**
                                                  **DISTRICT JUDGE**